Brian S. King, #4610
**BRIAN S. KING PC**
336 South 300 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

Attorney for Plaintiffs

---

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | | |
|---|---|---|
| SCOTT M. and LAURI M., individually and as guardians of C.M., a minor, | : : : | Civil No. 1:17-cv-00009 EJF |
| Plaintiffs, | : : : | **COMPLAINT** |
| vs. | : : | |
| BLUE CROSS AND BLUE SHIELD OF MASSACHUSETTS dba Blue Cross Blue Shield HMO Blue, | : : : : | |
| Defendant. | : | |

---

Plaintiffs Scott M. and Lauri M., individually and as guardians of C.M., a minor, and through their undersigned counsel, complain and allege against the Defendant as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Scott M. and Lauri M. ("Scott" and "Lauri" respectively), are natural persons residing in Norfolk County, Massachusetts.

2. Scott, Lauri, and their family have health coverage under a group health benefit plan ("the Plan") sponsored by Scott's employer and insured by Blue Cross Blue Shield of Massachusetts ("BCBSM"). The particular insurance policy issued by BCBSM to Scott's employer is an HMO Blue policy.

3.  Scott and Lauri's son, C.M., a minor, was treated for his mental health conditions at Waypoint Academy ("Waypoint") in the State of Utah.

4.  BCBSM is part of a nationwide network of Blue Cross Blue Shield affilates.

5.  BCBSM insureds across the country who receive medical treatment in the State of Utah have their claims submitted and processed through the local Blue Cross Blue Shield affiliate, Regence Blue Cross Blue Shield ("Regence").

6.  Claims for C.M.'s care at Waypoint were submitted and processed by Regence before being transmitted to BCBSM.

7.  C.M. received treatment at Waypoint in the State of Utah, from October 23, 2014 to December 17, 2015.  Waypoint is licensed in the State of Utah as a residential treatment center and provides sub-acute treatment for adolescents with mental health conditions and disorders.

8.  Waypoint is an out of network provider in the national Blue Cross Blue Shield insurance network to which both BCBSM and Regence belong.

9.  BCBSM provides coverage for both physical and mental illnesses and injuries.

10. The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*.

11. This Court has jurisdiction of this case under 29 U.S.C. §1132(e) (1) and 28 U.S.C. §1367.

12. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) because the medical treatment at issue in this case was provided in Utah, C.M.'s claims were initially received and processed by Regence in Utah, and BCBSM does business in the State of Utah. In addition, the financial obligation of the Plaintiffs to C.M.'s healthcare providers was

incurred in the state of Utah.  Based on ERISA's nationwide service of process provision and 28 U.S.C. § 1391, venue is appropriate in the state of Utah.

13. The remedies the Plaintiffs seek under the terms of ERISA and the terms of the Plan are for payment of benefits for C.M.'s residential treatment services that have been wrongfully denied.  In addition, the Plaintiffs request an award of prejudgment interest for interest and an award of attorney fees and costs.

## BACKGROUND FACTS

### C.M.'s Conditions and Treatment

30. C.M. had a normal infancy and childhood and met his developmental milestones.  He was a shy and pleasant child.

31. C.M. was diagnosed with attention deficit hyperactivity disorder ("ADHD") and an individual education plan ("IEP") was put in place to assist him with his symptoms.  The IEP was frustrating and humiliating for C.M. because he always tested as having a high IQ and he perceived IEPs as being only for "slow" students.

32. C.M. struggled with anxiety and depression for many years and participated regularly in therapy.  However, as he got older, his symptoms worsened significantly.  He lacked self-control and had frequent emotional outbursts, refused to attend school, and was often severely depressed.  C.M. had a history of self-harm, specifically cutting.

33. C.M. was also abusing substances including marijuana, alcohol, cocaine, and prescription drugs.

33. C.M. was admitted at Waypoint on October 23, 2014, following three lengthy acute inpatient admissions. Two of the hospital admissions were a result of active suicide attempts.

34. At the time of his admission, C.M. was diagnosed with "Major Depressive Disorder recurrent, moderate, without psychotic features, 296.32," "Anxiety Disorder Unspecified, 300.00," and "Attention Deficit Hyperactivity Disorder, Predominately inattentive type, 314.00."

35. While at Waypoint, C.M. participated in individual, group, and family and milieu therapies. In addition, he was involved in age-appropriate academic and recreational activities as required for licensure of mental health facilities providing treatment for adolescents.

36. When C.M. was discharged from Waypoint on December 17, 2015, he had successfully completed the treatment program and graduated. He was discharged with a recommendation for ongoing individual and family therapy to assist him in his transition from Waypoint to a boarding school in Vermont where he planned to complete his high school education. C.M. had experienced a significant improvement in his symptoms, his ability to identify triggers, and to manage his depression and anxiety.

## The Appeal of the Plan's Denial of Coverage

37. Bills were submitted to Regence for payment of C.M.'s medical expenses. Those bills were forwarded to BCBSM for processing.

38. On October 27, 2014, BCBSM wrote to C.M. and stated that his care was not eligible for coverage because:

> [w]e could not approve coverage of this service because we have determined that your child's[1] clinical condition does not meet the medical necessity criteria required for acute psychiatric inpatient stay in the area of immediate safety risk.

39. The BCBSM letter stated that it was relying on the InterQual® Criteria to reach the conclusion that C.M.'s claim should not be paid.

40. Lauri appealed the denial of coverage in a letter dated December 8, 2014. In her letter, Lauri stated that she did not have a full copy of the criteria relied on by BCBSM to deny the claim and requested that, in the event BCBSM maintained its denial, that a complete copy be provided to her.

41. Lauri included a copy of a psychiatric evaluation completed for C.M. by Brian L.B. Willoughby, Ph.D. which indicated a "high risk of suicidal ideation/intent and continued risk behaviors" for C.M. She also included copies of the up-to-date medical records compiled by Waypoint.

42. On December 12, 2014, four days after the date of Lauri's appeal, BCBSM maintained its denial of coverage for C.M.'s treatment. The basis for denial was: "the member's clinical condition does not meet the medical necessity criteria required for an acute residential psychiatric stay . . .."

43. BCBSM referenced in its denial letter that a copy of the InterQual® criteria was included as Lauri had requested. However, the criteria were not included with the denial letter.

44. The internal appeal process with BCBSM was exhausted.

45. Scott and Lauri retained the Nannarone Law Group ("NLG") to assist them with the claim, and on March 16, 2015, NLG wrote to BCBSM. NLG asserted that the BCBSM decision to deny coverage was flawed and relied on incorrect criteria.

---

[1] The letter is written as if it were addressed to Scott and Lauri, C.M.'s parents, rather than to C.M. himself.

46. Scott and Lauri requested an external appeal and on March 27, 2015, submitted their letter.  First, they noted that the individual who conducted the clinical review of the claim had not been identified by BCBSM and they requested that the individual's name and credentials be provided as required for a denial based on medical necessity.

47. Second, Scott and Lauri complained that they had not received the criteria as requested and they were therefore hindered in their ability to rebut BCBSM's statements.  Third, Scott and Lauri noted that they had provided a copy of Waypoint's licensure with their first appeal, demonstrating that it was an "intermediate" treatment facility.  Application of criteria for "acute residential" treatment was incorrect.

48. Scott and Lauri went on to provide a detailed history of C.M.'s development and treatment history, providing a number of citations to Waypoint medical records to demonstrate the necessity of C.M.'s treatment.  They also argued that BCBSM's denial was a violation of the federal Mental Health Parity and Addiction Equity Act in failing to provide coverage for mental health treatment in the same way it provides coverage for physical medical conditions.

49. Scott and Lauri included, among other things, up-to-date medical records for C.M.'s treatment at Waypoint, records from C.M.s acute admissions at McLean Hospital, and letters from several of C.M.'s treating therapists recommending the necessity of residential treatment for C.M.

50. The external reviewer, Imedecs, responded on May 27, 2015, and upheld BCBSM's denial of coverage.  The Imedecs reviewer was not identified by name, but was stated to be certified in psychiatry with particular expertise in addiction psychiatry.

51. The Imedecs decision referenced "acute residential psychiatric treatment" as BCBSM's had done and concluded that there was "no evidence presented in the medical record" that C.M. required "24 hour supervision associated with RTC care . . .."

52. NLG wrote again to BCBSM on August 7, 2015 demanding payment of the claim and a "reasonable offer of settlement" under Massachusetts state statutes.  The NLG letter outlined the procedural history of the claim to date, argued that all clinical individuals who actually treated C.M. agreed that he needed residential treatment, and stated that application of the correct criteria would result in payment of the claims.

53. BCBSM responded on September 9, 2015, and maintained that its application of the criteria was correct and denial of the claim was appropriate.  However, BCBSM indicated it would conduct a "thorough investigation" of the matter and provide a response no later than September 25, 2015.

54. BCBSM did not provide the promised response to NLG.

## PLAN TERMS

55. The BCBSM HMO Blue policy provided to the Plaintiffs is entitled "Your Benefits" ("the SPD"), effective January 1, 2014.  Nowhere in the SPD is residential treatment explicitly and generally excluded from coverage.

56. In the "Schedule of Benefits" under Mental Health and Substance Abuse Treatment, the BCBSM policy lists coverage for both in and out-of-network facilities for "inpatient" care at a "Mental Hospital" or a "Substance Abuse Facility" but makes no reference to sub-acute residential treatment.

57. Residential treatment is not discussed in any way in the Schedule of Benefits, pp 5-6; in the discussion of "mental Health Parity Laws" on p. 4,; or the "Explanation of Terms" section entries for "Mental Conditions," p. 15, Part 2, and "Mental Health Providers," p. 16.

58. The "Covered Services" section of the BCBSM policy discusses what is covered for "Mental Health and Substance Abuse Treatment" on pp. 41-42, Part 5.  There are a number of limitations or exclusions for coverage of residential treatment included on p. 42, including exclusion for residential treatment that is "custodial," exclusion for residential treatment services that are provided in "educational, vocational, or recreational settings; and 'outward bound-type,' 'wilderness,' 'camp,' or 'ranch' programs."  The BCBSM policy goes on to acknowledge that these excluded programs may involve therapeutic elements provided by appropriately licensed clinical staff, but nevertheless excludes coverage for those programs.

59. Based on the language in BCBSM's denial, the only basis for denial of C.M.'s residential treatment claims was its erroneous evaluation of those claims as an "acute psychiatric inpatient stay" and a conclusion that because C.M.'s condition was not an "immediate safety risk."

## CAUSE OF ACTION
### (Violation of the Terms of the Plan)

60. The actions of BCBSM, in denying coverage for C.M.'s residential treatment services based on an erroneous reliance on criteria for acute inpatient psychiatric care are a violation of the terms of ERISA and the Plan.

61. The actions of BCBSM in denying coverage for residential treatment services to the Plaintiffs based on application of erroneous level of care guidelines have caused significant loss to the Plaintiffs in the form of denied medical benefits.

62. BCBSM is responsible to pay the Plaintiffs the benefits for medical treatment C.M. at Waypoint for his mental health conditions, together with an award of pre and post-judgment interest and attorney fees and costs incurred.

63. Plaintiffs further seek an award of pre and post-judgment interest of past due benefits and an award of attorney fees and costs.

WHEREFORE, Plaintiffs pray for judgment against BCBSM as follows:

1. For judgment in the amount of the unpaid expenses arising out of C.M.'s residential treatment care at Waypoint, together with an award of pre-and post-judgment interest and an award of attorney fees and costs;

2. For an Order that the level of care criteria BCBSM relies on to deny payment for residential treatment services provided to individuals with mental health conditions may not be utilized by BCBMS and that all costs incurred by the Plaintiffs for residential treatment services provided for C.M.'s mental health conditions must be paid, together with pre and post-judgment interest and an award of attorney fees and costs;

3. Plaintiffs seek this Court's declaration that BCBSM's practice of evaluating claims for coverage for residential treatment services utilizing acute inpatient level of care criteria violates the requirements of ERISA and the terms of the Plan;

4. Plaintiffs ask this court to enjoin BCBSM's practice of denying coverage for residential treatment services; and

     5.     For such further relief as the Court deems just and proper.

DATED this 11th day of January, 2017.

                                                  _s/ Brian S. King_
                                                  Brian S. King
                                                  Attorney for Plaintiffs

Plaintiffs' Address:
Norfolk County, Massachusetts